UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LOUISIANA STATE                          CIVIL ACTION

VERSUS                                   NO: 21-1523

DEPARTMENT OF COMMERCE ET AL.            SECTION: "H"


ORDER AND REASONS

Before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. 13). For the following reasons, the Motion is GRANTED.


BACKGROUND

Plaintiff Louisiana State, through the Louisiana Department of Wildlife and Fisheries, brings Administrative Procedures Act ("APA") claims arising out of the National Marine Fisheries Service's ("NMFS") 2019 regulation requiring Turtle Excluder Devices ("TEDs") on skimmer trawl vessels of a certain size operating in inshore waters, 84 Fed. Reg. 70,048 (Dec. 20, 2019) (the "Final Rule"). Defendants are NMFS, the National Oceanic & Atmospheric Administration, the Department of Commerce, Chris Oliver as Assistant

1

Administrator for Fisheries, and Samuel D. Rauch, III as Deputy Assistant Administrator for Regulatory Programs (collectively, "the Agency").

The Final Rule was published on December 20, 2019 to promote sea turtle conservation by requiring TEDs on all skimmer trawls on vessels greater than 40 feet in length. Skimmer trawls are commonly used by shrimpers in Louisiana. The original effective date of the Final Rule was April 1, 2021. On March 31, 2021, however, the Agency issued a Delay Rule, postponing the effective date until August 1, 2021 in light of the effects of the COVID-19 pandemic on travel and the ability of the Agency to hold in-person TED training sessions ("the Delay Rule").

The Final Rule went into effect on August 1, 2021. On August 11, 2021, Plaintiff filed this action, arguing that (1) the Final Rule is arbitrary and capricious, and (2) the failure to reconsider the August 1, 2021 effective date of the Final Rule is arbitrary and capricious in light of the continued effects of the COVID-19 pandemic on the supply chain and in-person TED trainings.

Initially, Plaintiff moved for a temporary restraining order immediately postponing the effective date of the Final Rule based on the Agency's failure to reconsider the August 1, 2021 effective date. Plaintiff argued that the Agency acted arbitrarily and capriciously in refusing to further extend the effective date past August 1, 2021 despite the ongoing COVID-19 pandemic. The Court denied Plaintiff's Motion, holding that it had not alleged any "agency action" with respect to the Agency's failure to further extend the effective date of the Final Rule. The Court noted that the record did not indicate that Plaintiff had ever requested extension of the effective date, and therefore there was no agency action for this Court to review.

2

In the instant Motion, Plaintiff seeks a preliminary injunction enjoining enforcement of the Final Rule or extending its effective date. In its Motion, Plaintiff has shifted its argument regarding the Final Rule's effective date. Now, Plaintiff argues that the effective date of the Final Rule and the Delay Rule are arbitrary and capricious because they did not consider the amount of time necessary for shrimpers to come into compliance with the Final Rule. It also argues that the Final Rule itself is arbitrary and capricious because it is a policy reversal that is contrary to findings.

## **LEGAL STANDARD**

An applicant for preliminary injunctive relief must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable harm if the injunction is not granted; (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) granting the preliminary injunction will not disserve the public interest.[1]  A preliminary injunction is an extraordinary remedy.[2] Accordingly, a preliminary injunction should only be granted when the party seeking it has clearly carried the burden of persuasion on all four requirements.[3]  In the end, a preliminary injunction is treated as an exception rather than the rule.[4]

---

[1] Lake Charles Diesel, Inc. v. Gen. Motors Corp., 328 F.3d 192, 195–96 (5th Cir. 2003).
[2] Miss. Power & Light Co. v. United Gas Pipe Line, Co., 760 F.2d 618, 621 (5th Cir. 1985).
[3] *Id.*
[4] St. of Tex. v. Seatrain Int'l, *S.A.*, 518 F.2d 175, 179 (5th Cir. 1975).

## LAW AND ANALYSIS

### A.      Likelihood of Success on the Merits

To show likelihood of success on the merits, the plaintiff need not prove that it is entitled to summary judgment.[5] "[I]t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."[6] Here, Plaintiff brings two claims arising under the APA: (1) that the effective date of the Final Rule and the Delay Rule are arbitrary and capricious and (2) that the Final Rule itself is arbitrary and capricious.[7] Because the Court finds a likelihood of success on the merits as to Plaintiff's argument that the Delay Rule was arbitrary and capricious, it need not consider its other arguments at this time.

The APA states, in pertinent part, that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall–
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be–
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;

---

[5] Allied Home Mortg. Corp. v. Donovan, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011).

[6] *Id.*

[7] Plaintiff's argument here differs from Count 1 in its Complaint, which it titles "Failure to Reconsider the August 1st Effective Date Is Arbitrary and Capricious." However, the Court finds that the recharacterization of its claim is properly before the Court and that Defendants have had ample opportunity to respond thereto.

> (C) in excess of statutory jurisdiction, authority, or limitations, or
> short of statutory right;
> (D) without observance of procedure required by law[.][8]

The Fifth Circuit has mirrored this language, finding that courts should only overturn rules pursuant to the APA if agency action "is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole."[9] An agency action is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended
> it to consider, entirely failed to consider an important aspect of the
> problem, offered an explanation for its decision that runs counter
> to the evidence before the agency, or is so implausible that it could
> not be ascribed to a difference in view or the product of agency
> expertise.[10]

"If the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld."[11]

At the outset, the Agency argues that the Delay Rule is not a final, reviewable agency action. This Court disagrees. "A final agency action is one that imposes an obligation, denies a right, or fixes a legal relationship."[12] In *Clean Air Council v. Pruitt*, the court held that the stay of an EPA rule was "essentially an order delaying the rule's effective date, and this court has held that such orders are tantamount to amending or revoking a rule."[13] It held that

---

[8] 5 U.S.C. § 706.

[9] Buffalo Marine Services, Inc. v. U.S., 663 F.3d 750, 753 (5th Cir. 2011) (citations omitted).

[10] Texas Oil & Gas Ass'n v. U.S. E.P.A., 161 F.3d 923, 933 (5th Cir. 1998) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

[11] *Id.* at 934.

[12] Veldhoen v. U.S. Coast Guard, 35 F.3d 222, 225 (5th Cir. 1994).

[13] 862 F.3d 1, 6 (D.C. Cir. 2017).

because the decision was the agency's final position on the issue and had immediate and direct effects on the parties, it was a final, reviewable order. Here too, the Delay Rule is the Agency's final decision regarding the date on which shrimpers are required to be in compliance with the Final Rule.[14] Accordingly, this Court finds that the Delay Rule is a final, reviewable agency action.

Plaintiff argues that the Delay Rule is arbitrary and capricious because it failed to consider the difficulty that shrimpers were having complying with the Final Rule in light of the COVID-19 pandemic. Plaintiff argues that supply-chain delays have made it impossible for shrimpers in Louisiana to secure TEDs to comply with the regulation and that the lack of in-person training sessions from the Agency has left shrimpers and net manufacturers confused. Plaintiff presents a declaration from Robert Boudreaux III, the owner and operator of Bob's Net Shop in Lafitte, Louisiana, in which he states that there has been a shortage of aluminum, very small twine, and angle measuring devices that has made it difficult to build TEDs. He also explained that each TED must be custom made by hand and that the process is time-consuming and tedious. He explained that net makers need training on how to make TEDs that comply with the Final Rule and that the lack of in-person training by the Agency left net makers "in the dark."

---

[14] Further, courts have reviewed the effective date of final rules where the agency was arbitrary and capricious in failing to give those affected by the rule sufficient time to comply. *See* Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Chao, 298 F. Supp. 2d 104, 119 (D.D.C. 2004); Nat'l Ass'n of Indep. Television Producers & Distributors v. Fed. Commc'ns Comm'n, 502 F.2d 249, 251 (2d Cir. 1974).

Indeed, the Agency seemed to recognize the time necessary to produce TEDs when it implemented the Final Rule. It stated that it had "delayed the effectiveness of the final rule until April 1, 2021, to allow for the manufacture of the necessary number of TEDs and for fishers, particularly lower income fishers, to prepare financially for the regulation."[15] However, in implementing the Delay Rule, the Agency stated that:

> We are now delaying the effective date of the final rule published on December 20, 2019, (84 FR 70048) until August 1, 2021. Safety and travel restrictions due to the COVID-19 pandemic have limited our ability to complete the in-person workshops and training sessions that we had anticipated and communicated to the public. This delay in effective date is necessary to provide us with additional time to conduct our planned outreach and training for fishers through a modified strategy, including but not limited to, virtual training sessions with the public. In addition to generally educating the public on the use of the [TED] devices, it will help prepare us for responding to installation and maintenance problems from industry when the regulations go in effect. This will allow fishers to be better prepared for compliance with regulations and reduce the likelihood of potential increased sea turtle deaths caused by widespread use of improperly constructed and/or installed TEDs.[16]

Accordingly, the Delay Rule does not indicate that the Agency considered the ability of net makers to produce sufficient TEDs and for shrimpers to comply with the Final Rule by August 1. Further, the Agency does not present any evidence that it considered those issues in selecting an August 1 effective date. While the Delay Rule addressed the additional time needed by the Agency to

---

[15] Sea Turtle Conservation; Shrimp Trawling Requirements, 86 Fed. Reg. 16,676 (Mar. 31, 2021).

[16] *Id.*; Sea Turtle Conservation; Shrimp Trawling Requirements, 84 Fed. Reg. 70,048 (Dec. 20, 2019).

train the net makers on how to produce TEDs to comply with the Final Rule, it did not take into consideration the fact that net makers would need time to hand make each TED after they received that training. The Agency therefore appears to have "entirely failed to consider an important aspect of the problem" when it selected an August 1 effective date in the Delay Rule.[17] This Court finds that Plaintiff has shown a likelihood of success on the merits as to the arbitrariness of the Delay Rule.

The Court further notes that shortly after the filing of this Motion, Hurricane Ida, a Category 4 hurricane, caused catastrophic damage in South Louisiana. While the full effects of the hurricane's destruction remain to be seen, this Court feels confident that it will exacerbate supply chain problems and distract net makers, whose homes and businesses may have been damaged, from constructing TEDs.

**B. Irreparable Harm**

Next, the Court must consider whether irreparable harm will result from the implementation of the Final Rule on August 1. "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages."[18] Plaintiff claims the premature effective date of the Final Rule will harm the shrimping industry and result in economic harm to the state.[19] Additionally, Plaintiff argues that it will not be able to recover money damages against the Agency due to sovereign immunity.

---

[17] *Texas Oil & Gas Ass'n*, 161 F.3d at 933.

[18] Janvey v. Alguire, 647 F.3d 585, 600 (5th Cir. 2011).

[19] "The State of Louisiana has standing to sue in the quasi-soverign capacity because of its interest in and ownership of its marine resources." State of La. ex rel. Guste v. Verity, 681 F. Supp. 1178, 1181 (E.D. La.), *aff'd*, 850 F.2d 211 (5th Cir. 1988).

In the Final Rule itself, the Agency recognized that, even when appropriately implemented, the "regulation may have significant adverse economic effects on the shrimp industry."[20] It acknowledged that the Rule may cause some vessels to cease shrimping operations and expected a reduction in gross revenue of approximately $2.939 million for the Gulf of Mexico harvesting sector.[21] In light of the aforementioned problems with compliance with the Rule prior to the effective date, the Louisiana Department of Wildlife and Fisheries estimates that 50% of Louisiana's shrimpers were unable to comply before shrimping season began. Accordingly, there are many more vessels that are not operating than originally estimated by the Agency, and the economic harm will likely be much higher. This includes increased impacts to employment, income, and the number of shrimp harvested, adversely affecting the shrimping industry, restaurants, and grocers. The Court therefore finds that Plaintiff has shown irreparable harm to its economy will result from failing to extend the effective date of the Final Rule.

## C. Balancing of Equities

Finally, the Court must consider whether the harm to Plaintiff outweighs the threatened harm to the Agency and whether granting the preliminary injunction will not disserve the public interest. "Federal courts have considered the balance of equities and public interest factors together as they overlap considerably."[22] Here, Plaintiff's and the public's interest in preserving Louisiana's economy outweighs the Agency's interest in beginning

---

[20] 84 Fed. Reg. 70,048 (Dec. 20, 2019).
[21] Final Environmental Impact Statement, Doc. 14-13.
[22] Texas v. United States, No. 6:21-CV-00003, 2021 WL 2096669, at *48 (S.D. Tex. Feb. 23, 2021).

enforcement of the Final Rule on August 1. The Agency estimates that the Final Rule will prevent the mortality of 801 to 1,158 sea turtles annually nationwide.[23] Plaintiff has shown that about half of its shrimpers are already in compliance with the Final Rule's requirements. Accordingly, a brief delay in implementation of the Final Rule to allow appropriate time for all shrimpers to come into compliance will not result in an unreasonable risk to sea turtles.

### D. Scope of Injunction

This Court finds that Plaintiff has carried its burden to show its entitlement to a preliminary injunction delaying the effective date of the Final Rule. In initially implementing the Final Rule in December 2019, the Agency recognized that a delay in the effective date of sixteen months was necessary to allow for new TEDs to be constructed and installed.[24] Three months later, the COVID-19 pandemic began, which slowed production and created supply chain difficulties. In the Delay Rule, the Agency delayed the effective date by four months. The Court finds that an additional six-month delay is appropriate to allow Louisiana's shrimpers to come into compliance with the Final Rule.

## CONCLUSION

For the foregoing reasons, the Motion for Preliminary Injunction is **GRANTED**. Defendants are enjoined from imposing 84 Fed. Reg. 70,048 (Dec. 20, 2019) in Louisiana inshore waters until February 1, 2022.

---

[23] Final Environmental Impact Statement, Doc. 14-13.
[24] 84 Fed. Reg. 70,048 (Dec. 20, 2019).

New Orleans, Louisiana this 9th day of September, 2021.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**