## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LOUISIANA STATE**                                  **CIVIL ACTION**

**VERSUS**                                           **NO: 21-1523**

**DEPARTMENT OF COMMERCE ET AL.**                    **SECTION: "H"**

## ORDER AND REASONS

Before the Court are Cross-Motions for Summary Judgment (Docs. 69, 71). For the following reasons, Defendants' Motion is **GRANTED**, and Plaintiff's Motion is **DENIED**.

## BACKGROUND

Plaintiff Louisiana State, through the Louisiana Department of Wildlife and Fisheries ("LDWF"), brings Administrative Procedures Act ("APA") claims arising out of the National Marine Fisheries Service's ("NMFS") 2019 regulation requiring Turtle Excluder Devices ("TEDs") on skimmer trawl vessels of a certain size operating in inshore waters, 84 Fed. Reg. 70,048 (Dec. 20, 2019) (the "Final Rule"). Defendants are NMFS, the National Oceanic & Atmospheric Administration, the Department of Commerce, Chris Oliver as

1

Assistant Administrator for Fisheries, and Samuel D. Rauch, III as Deputy Assistant Administrator for Regulatory Programs (collectively, "the Agency").

The Final Rule was published on December 20, 2019 to promote sea turtle conservation by requiring TEDs on all skimmer trawls on vessels greater than 40 feet in length. Skimmer trawls are commonly used by shrimpers in Louisiana. The original effective date of the Final Rule was April 1, 2021. On March 31, 2021, however, the Agency issued a Delay Rule, postponing the effective date until August 1, 2021 in light of the effects of the COVID-19 pandemic on travel and the ability of the Agency to hold in-person TED training sessions ("the Delay Rule").

The Final Rule went into effect on August 1, 2021. Thereafter, Plaintiff filed this action and sought a preliminary injunction enjoining enforcement of the Final Rule or extending its effective date. In its Motion, Plaintiff argued that the effective date of the Final Rule and the Delay Rule were arbitrary and capricious because they did not consider the amount of time necessary for shrimpers to come into compliance with the Final Rule. Holding that Plaintiff showed a likelihood of success on the merits as to the arbitrariness of the Delay Rule, this Court granted Plaintiff relief and enjoined Defendants from enforcing the Final Rule in Louisiana inshore waters until February 1, 2022.

Now before the Court are cross-motions for summary judgment on Plaintiff's claim that the Final Rule is arbitrary and capricious. Because the Court finds that Plaintiff lacks standing to bring its claims, it does not reach the merits.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).

[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

necessary facts."[7]   Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

At the outset, the Agency argues that the State does not have standing to bring these claims. Standing under Article III requires plaintiffs to "demonstrate a 'personal stake' in the suit."[9] To establish such a personal stake for purposes of Article III, a plaintiff must show three elements: (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) a "causal connection between the injury and the conduct complained of"; and (3) a likelihood, as opposed to mere speculation, that a favorable decision will redress the injury.[10] "When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant."[11] "The party invoking federal jurisdiction bears the burden of establishing these elements."[12] "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the

---

[7] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[9] *Camreta v. Greene*, 563 U.S. 692, 701 (2011) (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009)).

[10] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations omitted).

[11] *Massachusetts v. E.P.A.*, 549 U.S. 497, 518 (2007).

[12] *Lujan*, 504 U.S. at 561.

plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."[13]

The State sets forth three ways in which it argues it has standing. First, it argues that it has standing in its quasi-sovereign capacity because of its interest in its marine resources. Indeed, courts have held that a state has standing to sue in a quasi-sovereign capacity "because of its interest in and ownership of its marine resources."[14] At the preliminary injunction stage, this Court accepted this argument as the State's basis for standing.[15] However, at the summary judgment stage, more is required.[16] In response to a summary judgment motion, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'"[17] Accordingly, the State must present summary judgment evidence showing "a concrete and particularized injury" to its quasi-sovereign interest that is "actual and imminent" in order to show standing.[18] Here, the State cites only to the allegations of its Complaint. It has made no attempt to show any injury to its marine resources resulting from the Final Rule. It therefore has not shown standing on this basis.

---

[13] *Id.*

[14] State of La. ex rel. Guste v. Verity, 681 F. Supp. 1178, 1181 (E.D. La.), aff'd, 850 F.2d 211 (5th Cir. 1988). Without much discussion, the district court in *Guste* held that the State had demonstrated standing in that case based on "its interest in and ownership of its marine resources." *Id.* On appeal, the Fifth Circuit did not address the issue of standing in its opinion affirming the decision. State of La., ex rel. Guste v. Verity, 853 F.2d 322, 326 (5th Cir. 1988).

[15] Doc. 32.

[16] *See Lujan*, 504 U.S. at 561.

[17] *Id.*

[18] *See Massachusetts*, 549 U.S. at 517.

5

Similarly, the State argues that it has standing as *parens patriae* to vindicate the economic injury of the entire state. To have *parens patriae* standing "the State must assert an injury to what has been characterized as a 'quasi-sovereign' interest."[19] Here again, however, the State cites only to the allegations of its Complaint and does not provide any evidence of economic harm to the state's economy caused by the Final Rule.

Finally, the State argues that it has standing in light of the injury it will suffer due to the expense and reallocation of resources necessary to enforce the Final Rule. In support, it provides only an affidavit from Chad Hebert, Colonel of the Louisiana Department of Wildlife and Fisheries ("LDWF") Enforcement Division in which he states that the duties imposed by the Final Rule on the LDWF Enforcement Division "could substantially burden and interfere" with its ability to "effectively perform its many other various enforcement duties."[20] In addition, he suggests that the state does not expect to receive federal funding to assist in the cost of the additional enforcement duties and will "result in additional strain" on LDWF resources.[21] These statements alone, however, are insufficiently vague, speculative, and conclusory to support standing.

In *Crane v. Johnson*, the Fifth Circuit affirmed the district court's holding that Mississippi lacked standing to bring an action against the Department of Homeland Security arising out of a federal immigration law, Deferred Action for Childhood Arrivals ("DACA").[22] The court held that

---

[19] Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez, 458 U.S. 592, 601 (1982).
[20] Doc 2-9.
[21] *Id.*
[22] Crane v. Johnson, 783 F.3d 244, 252 (5th Cir. 2015).

Mississippi's alleged fiscal injury was "purely speculative" because it failed to present "concrete" evidence that DACA would increase its costs.[23] The court held that Mississippi's assertion that DACA would cost the state money because it provides social benefits to illegal immigrants was insufficient to establish standing where it "submitted no evidence that any DACA eligible immigrants resided in the state" or of "costs it would incur if some DACA-approved immigrants came to the state."[24]

Similarly, the sole affidavit presented by the State in this case is insufficient to establish standing where it has provided no evidence of any actual injury. There is no evidence of how the Final Rule will burden the LDWF or even any proof that it will not receive federal funding to offset that burden. The assertion that the Final Rule "*could* substantially burden" the LDWF is simply insufficient to survive summary judgment on the issue of standing. "Article III demands more than such conclusory assertions."[25] Without standing, this Court lacks subject matter jurisdiction to address the merits of this case.[26]

## CONCLUSION

For the foregoing reasons, Defendants' Motion is **GRANTED**, and Plaintiff's Motion is **DENIED**.  This matter is dismissed for lack of subject matter jurisdiction.

---

[23] *Id.*

[24] *Id.*

[25] Ctr. for Biological Diversity v. United States Env't Prot. Agency, 937 F.3d 533, 545 (5th Cir. 2019).

[26] *See* Abraugh v. Altimus, 26 F.4th 298, 303 (5th Cir. 2022).

New Orleans, Louisiana this 28th day of November, 2022.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**